UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE ANDRAS,                          Case No. 18-10192

     Plaintiff                          Matthew F. Leitman
v.                                      United States District Judge

COMMISSIONER OF SOCIAL                  Stephanie Dawkins Davis
SECURITY,                               United State Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On January 17, 2018, plaintiff Nicole Andras filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). This case was referred to the undersigned for all pre-trial purposes. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 10, 11).

### B.   Administrative Proceedings

Andras filed the instant claims for a period of disability and disability insurance benefits on June 18, 2014, alleging disability beginning January 22,

1

2014.  (Tr. 13).[1]  The claims were initially denied by the Commissioner on

September 26, 2014.  (Tr. 13).  Andras requested a hearing, and on April 22, 2016,

she appeared and testified, with the assistance of her attorney, before

Administrative Law Judge (ALJ) Virginia Herring, who considered the case *de

novo*.  (Tr. 35-98).  In a decision dated December 9, 2016, the ALJ found that

Andras was not disabled.  (Tr. 10-29).  Andras requested a review of this decision,

and the ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied plaintiff's request for review on November 13, 2017.  (Tr.

1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's

motion for summary judgment be **DENIED**, and that the findings of the

Commissioner be **REVERSED AND REMANDED** for further proceedings

pursuant to Sentence Four of 42 U.S.C. § 405(g).

## II.   FACTUAL BACKGROUND

Andras was born in 1975 and was 38 years old on the alleged disability

onset date.  (Tr. 28).  Her last date insured is September 20, 2019.  (Tr. 16).  In

November 2012, Andras was diagnosed with Guillain-Barre syndrome while she

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 8.

was working for the Vanguard Health System as a respiratory therapist.  She did not work for a time while she received treatment for Guillain-Barre syndrome and then returned to work with some restrictions in 2013.  (Tr. 22).  When she returned to work, she was initially restricted to part-time work but in time was able to increase her hours to 32-36 hours per week just before injuring herself during a fall at work on January 22, 2014.  (Tr. 22).  Andras's past relevant work as a respiratory therapist is classified as medium and skilled.  (Tr. 27-28).  She stopped working as a respiratory therapist in 2014 after the fall at work.  (Tr. 54).  She lives with her son and, at the time of hearing, had returned to work part-time doing clerical work in a hospital emergency department.  (Tr. 47, 57).

The ALJ applied the five-step disability analysis to Andras's claim and found at step one that she had not consistently engaged in substantial gainful activity since the alleged onset date.  (Tr. 16).  At step two, the ALJ found that Andras's major depression; history of Guillain-Barre syndrome; history of left distal radial fracture with residual arm and left sided back, leg and body pain status post slip and fall; lower lumbar disc bulging and protrusions from L3 to S1 with left sided sciatica and mechanical back pain; and migraine headaches were severe impairments.  (Tr. 16).  At step three, the ALJ found no evidence that Andras's impairments met or equaled one of the listings in the regulations.  (Tr. 17-20).  The ALJ determined that Andras has the following residual functional capacity (RFC):

3

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) except the claimant can: lift up to
> 10 pounds occasionally; and negligible amounts
> frequently; sit for six of eight hours and stand or walk for
> four of eight hours in a work day. She needs to be able to
> alternate between sitting and standing at least every 30 to
> 45 minutes. She can occasionally climb stairs and ramps,
> but never climb ladders, ropes or scaffolds. She can
> occasionally balance stoop, kneel, crouch, or crawl. She
> can frequently handle or finger. She is limited to simple
> routine tasks. She requires the use of the handheld
> assistive device for prolonged ambulation or prolonged
> standing, with prolonged meaning longer than two
> minutes.

(Tr. 20).  At step four, the ALJ concluded that Andras could not perform her past

relevant work.  (Tr. 27-28).  At step five, the ALJ concluded that, with her RFC,

Andras could perform jobs that existed in sufficient numbers in the national

economy and thus, she has not been under a disability since the alleged onset date.

(Tr. 28-29).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

4

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

      This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.). Title II benefits are available to qualifying wage earners who become

disabled before their insured status expires. Whereas, Title XVI benefits are

available to poverty-stricken adults and children who become disabled. While the

two programs have different eligibility requirements, "DIB and SSI are available

only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined

by applying the five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520,

416.920. Essentially, the ALJ must determine whether: (1) the claimant is

engaged in significant gainful activity; (2) the claimant has any severe

impairment(s); (3) the claimant's impairments alone or in combination meet or

equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the claimant can perform.  (*Id.*).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

Though Andras did not raise a step three error, in the view of the

undersigned, there is a significant error in the ALJ's sequential analysis at step

three on the issue of medical equivalence, requiring remand.  The Court may raise

such an obvious and significant legal error *sua sponte*.  *See e.g*., *Trainor v.

Comm'r of Soc. Sec*., 2014 WL 988993, at *23-24 (E.D. Mich. Mar. 13, 2014)

(Berg, J.) (citing *Fowler v. Comm'r v. Comm'r of Soc. Sec*., 2013 WL 537883, at

*3 n. 5 (E.D. Mich. Sept. 25, 2013) (finding no error in magistrate judge *sua

sponte* raising the absence of an expert opinion on equivalence).[2]

The ALJ noted that no state agency medical advisor assessed Andras's

impairments.  At the time of the state agency review, plaintiff's file contained

medical records from only two sources:   Harper Hospital the Rehabilitation

Institute of Michigan.  (Tr. 100, 256-258; 259-303).  Because of plaintiff's

apparent non-responsiveness to the agency's request(s) for additional information,

---

[2] As explained in *Fowler v. Comm'r of Soc. Sec*., 2013 WL 5372883, at *3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District and throughout the Circuit.  *See Gwin v. Comm'r of Soc. Sec*., 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec*., 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.); *Bucha v. Comm'r of Soc. Sec*., 2016 WL 5340271*3 n. 3 (W.D. Mich. 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the wrong standard in this case as a matter of law."); *Mian v. Colvin*, 2015 WL 2248750, *14 (E.D. Tenn. 2015) ("[T]he Court may address an issue sua sponte should it find error upon review.").

and the resulting dearth of medical records, her claims of physical disability failed.

Further, there were zero records regarding her mental impairments available for the

state agency psychologist to review.  As a result, the mental health medical advisor

unsurprisingly concluded "there is insufficient evidence to substantiate the

presence of a disorder."  (Tr. 103).  Leading up to and following plaintiff's

administrative hearing, the ALJ received considerably more medical evidence

relating to both her mental and physical impairments.  (Tr. 13-14).

After considering the entire record, the ALJ expressly determined that

Andras's physical impairments did not meet the requirements for any

musculoskeletal, neurological or other related listing and found that her mental

impairment did not meet Listing 12.04 (depressive, bipolar and related disorders).

(Tr. 17-20).  That determination was well within the ALJ's purview.  However, the

ALJ then went on to conclude that Andras's mental and physical impairments did

not medically equal any Listing, without the benefit of any medical opinion on

equivalency for her physical impairments and without any indication that her

mental and physical impairments were assessed in combination.  A psychologist,

Dr. Colin King, initially considered Andras's claimed mental impairment, but, as

noted above, there were no records available to him at that time regarding her

mental impairments.  (Tr. 103).  Thus, he found that there was insufficient

evidence to evaluate the claim.  *Id*.  But, the mental health advisor's evaluation, or

in this case non-evaluation, is only applicable to plaintiff's claimed mental

impairments.[3]  This unusual procedural wrinkle left the ALJ without any opinion

on equivalence. Though the ALJ took great care to otherwise ensure that the record

was complete – notably, pursuing documentation from various providers whose

reports were not included in the record at the time of the hearing, the ALJ neither

obtained an opinion on equivalence nor conducted any analysis on equivalency

concerning Andras's physical impairments in combination with her mental

impairments.[4]

---

[3] The expert opinion requirement for equivalency can be satisfied by a medical advisor's signature on the Disability Determination Transmittal Form.  *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")).  In the instant record, there is Disability Determination and Transmittal Form and Disability Determination Explanation signed by Colin King, Ph.D. as to Andras's mental impairments, but only a single decision-maker signed these documents as to her physical impairments and functioning.  (Tr. 99-105).  Dr. King is not qualified to assess Andras's mental functioning in combination with her physical impairments because he is not a medical doctor.  *See Greene-Howard v. Comm'r of Soc. Sec.*, 2017 WL 2118256, at *11 (E.D. Mich. May 15, 2017) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's physical conditions); *Byerley v. Colvin*, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing.")).

[4] The procedural history perhaps explains the oversight:  The ALJ's decision explains that due to the dearth of evidence in the record during the time leading up to the hearing, the agency was unable to identify any medically determinable impairment and as a consequence, did not assess Andras's claimed impairments.  The ALJ then, through her own diligence, obtained additional records substantiating the existence of both mental and physical severe impairments.  Yet, the ALJ was left with no medical opinion evaluating those impairments for equivalence.

The Commissioner is required to have a medical opinion to support the equivalency analysis.  *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*, 987 F.Supp.2d 135, 148 (D. N.H. 2012) (SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.) (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)).  Indeed, the applicable regulation requires that an opinion by a medical consultant be considered in making such an assessment:

> When we determine if your impairment medically equals
> a listing, we consider all evidence in your case record
> about your impairment(s) and its effects on you that is
> relevant to this finding.  We do not consider your
> vocational factors of age, education, and work experience
> (see, for example, § 404.1560(c)(1)).  *We also consider
> the opinion given by one or more medical or
> psychological consultants designated by the
> Commissioner.*  (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added).  As noted, the ALJ did not obtain any

opinion from a medical advisor on equivalency in this case regarding Andras's

severe physical impairments.

Compounding the failure to obtain a medical advisor opinion on equivalence

as to Andras's severe physical impairments, is the fact that the ALJ's resulting

approach only partially addresses a critical component of the equivalence analysis,

namely the requirement to assess severe impairments, both mental and physical, in

*combination*.  If a claimant has more than one severe impairment (as Andras does

here), none of which meet a listing singularly, the Commissioner must determine

whether "the combination of impairments is medically equal to the listed

impairment."  20 C.F.R. § 404.1526(b)(3).  Beyond the conclusory heading

preceding the actual discussion, there is no indication that the ALJ considered all

of Andras' severe impairments in combination.  *See also Wilcox v. Comm'r of Soc.

Sec.*, 2014 WL 4109921, *4 (E.D. Mich. 2014) (Duggan, J.) (The ALJ failed to

consider the severity of plaintiff's impairments in combination, as prescribed by 20

C.F.R. § 416.920(c)); *see also* 42 U.S.C. § 423(d)(2)(B) ("In determining whether

an ... impairment or impairments are of a sufficient medical severity such that [a

finding of disability would be warranted], the Commissioner ... shall consider the

combined effect of all of the individual's impairments without regard to whether

any such impairment, if considered separately, would be of such severity."); *Brown*

*v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (The

lack of an expert opinion on whether the claimant's physical impairments (alone or

combined with her mental impairments) medically equal any listed impairment is

clear error and requires remand where the record is not so lacking in medical

findings that a finding of equivalence is implausible.) (Drain, J.).  Again, there is

no opinion from a medical advisor addressing whether Andras's severe mental and

physical impairment impairments in *combination* equaled a listing.

It is true that the failure to obtain a medical opinion on equivalence amounts

to harmless error under some instances, but the current circumstances do not

appear to qualify.  *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861,

at *6 (E.D. Mich. Sept. 26, 2014).  As explained in *Bukowski*, "'the harmless error

inquiry turns on whether the ALJ would have reached the same conclusions,' at

Step Three had there been a medical opinion on the combination of Bukowski's

psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5.  In

*Bukowski*, the failure to obtain a physical equivalence opinion was deemed

harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6.

Here, unlike the plaintiff in *Bukowski*, Andras has not made any such claim. In contrast to *Bukowski*, Andras is claiming that both severe physical and mental impairments affect her ability to work.  As to her mental impairments, as Andras explains in her brief, her treating psychologist, Dr. Cornette described her as reporting symptoms of "depressed mood, decreased energy, irritability and anxiousness resulting from chronic pain," and observed Andras to be "worrisome, sad, apathetic and depressed."  (Tr. 311-14, 316-35).  Dr. Cornette also described Andras as exhibiting "some cognitive slowing in her thought process … recent memory was considered impaired … [c]oncentration was also considered impaired, as was abstract thinking."  *Id*.  As the ALJ acknowledged, Dr. Cornette's medical records on these points were objective (in that they described observations) and consistent (in describing Andras as "depressed, anxious, tearful, distractible and rambling).  (Tr. 18).  The ALJ also indicated Dr. Cornette was informed by observations of Andras longitudinally—noting effects of medication and therapy sessions—and that Dr. Cornette described only partial improvement. *Id*.  The ALJ concluded that Andras's major depressive disorder is a severe impairment, and also found that at least some of Dr. Cornette's opinions were

consistent with the hearing testimony and medical evidence of record.  She also

indicated that Andras's headaches, given that they purportedly interfere with her

concentration, were considered in concluding that her mental impairments affected

her RFC.  (Tr. 18, 22).  Indeed, the ALJ concluded that Andras was mildly

restricted in her social functioning and activities of daily living and moderately

impaired with respect to concentration, persistence, and pace.  (Tr. 19).

And, in further contrast to *Bukowski*, Andras's medical records – once they

were rendered complete - contain a substantial number of objective medical

findings concerning her severe physical impairments.  For example they show: (1)

inability to stand fully upright due to back pain along with difficulty sitting in an

upright position, with rotation to try to alleviate hip and leg pain, numbness of left

foot and weakness with pain inhibition in lifting the left leg, straightening the knee,

difficulty getting on and off the examination table due to lower back pain, pain and

clicking of the left wrist (Tr. 348-349); (2) antalgic gait (Tr. 353, 400); (3) range of

motion studies demonstrating painful motion and reduced mobility of the left wrist

and thumb, gripometer testing demonstrating reduced power, strength and

endurance of the left upper extremity, performance and endurance delay (Tr. 354);

(4) weakness in the left shoulder girdle and complaints of radiating pain into the

intrascapular region, palpable click over the posterior scapula, weakness of the

triceps (Tr. 361); (5) left straight leg raising reproducing pain extending into

sacroiliac joint region (Tr. 361); (6) frequent headaches with nausea, vomiting, photophobia and blurred vision (Tr. 369, 372, 382-383, 435); (7) falls because of left leg giving out due to foot numbness (Tr. 373); (8) MRI showing shallow disc protrusion at L3-4, bulge at L4-5, and facet arthropathy with combined shallow disc bulge at L5-S1 (Tr. 383); (9) Dr. Newman's opinions that Andras could only sit 3 hours per day and stand/walk 2 hours per day and could not maintain full-time competitive employment (Tr. 385-388); (10) Dr. Pollina's opinion that she could only work three 8-hour shifts per week (Tr. 396); and (11) Dr. Pollina's recommendation for SI injections and radiofrequency ablation of the SI joint (Tr. 400-401).

Notwithstanding the ALJ's analysis on the Listings, considering evidence relied on by the ALJ supporting Andras's mental impairment, and the evidence listed above regarding Andras's physical impairments, it cannot be said that the record is so lacking in medical findings that a finding of equivalence, when her physical impairments are considered in combination with one another and/or with her mental impairments, is implausible. Indeed, it is not evident that a trained medical advisor, viewing the record as a whole and along a continuum would have reached the same conclusion when considering all of Andras's severe mental and physical impairments in combination. Though it is possible that plaintiff may still ultimately be deemed not disabled after a proper equivalency evaluation, the

caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) is apt

here.  There the Sixth Circuit observed that "courts generally should exercise

caution in conducting harmless error review" of a step three finding because

harmlessness "may be difficult, or even impossible, to assess." *Id.* at 655-58.  Its

pertinence here is that neither the ALJ nor this Court possesses the requisite

medical expertise to interpret the significant medical evidence in the record to

determine if Andras's severe mental and physical impairments, in combination,

equal any of the applicable listings.  *See also Allor v. Colvin*, 2016 WL 7650798, at

*6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), report and recommendation

adopted 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.).  The objective

medical findings in this case simply do not lend themselves to neat lay

interpretation by the Court; and, in view of the appreciable number of medical

findings supporting Andras's physical impairments, along with her well-supported

mental impairment, the Court does not deem it a prudent exercise to analyze

equivalence in the first instance.  *See Freeman v. Astrue*, 2012 WL 384838 at *5

(E.D. Wash. Feb 6, 2012) ("Neither the ALJ nor this court possesses the requisite

medical expertise to determine if Plaintiff's impairments (including pain) in

combination equal one of the Commissioner's Listing."); *Brown v. Comm'r of Soc.

Sec.*, 2014 WL 222760, at *15 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (Plaintiff's

appreciable medical findings supporting her impairments, while insufficient to

meet a listing, presented sufficient evidence to suggest that a finding of medical equivalence was at least plausible, thereby necessitating a medical opinion on the issue).  Thus, the error is not harmless.

In fashioning the RFC without the assistance of a medical opinion on equivalence of Andras's physical impairments and the combination of all of her impairments, the ALJ carved out several limiting functions based on her own interpretation of the medical records.  For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to Andras's mental and physical impairments in combination and for reevaluation of her credibility, her treating physicians' opinions, and the RFC in light of the new opinion.  Updated vocational expert testimony may also be necessary, based on the conclusions of the medical advisor and the reassessment of the preceding issues.  In light of the foregoing conclusions, Andras's other points of error need not be more fully addressed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that the findings of the

Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 11, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that on <u>February 11, 2019</u>, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov